IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHRAM ABDOLLAHI ALIBEIK,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL CHERTOFF, et al.,<br><br>    Defendants.<br>_____ / | No. C-07-01938 EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On April 5, 2007, Plaintiff Shahram Abdollahi Alibeik filed a petition for writ of mandamus pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, et seq., alleging that Defendants have failed to adjudicate his I-485 application for permanent residency within a reasonable time. In his cross-motion for summary judgment, Plaintiff seeks an order directing the United States Citizenship and Immigration Services ("USCIS") to adjudicate his I-485 application, which has been pending for two and one-half years. In their cross-motion for summary judgment, Defendants argue that this Court lacks jurisdiction, and that in any event, the delay in processing Plaintiff's application is reasonable. Because this matter is appropriate for decision without oral argument, the Court vacated the November 13, 2007 hearing in this matter and now issues the following Order.

### I.  Factual Background

Plaintiff is a native and citizen of Iran. On April 1, 2005, Plaintiff filed an I-485 application for lawful permanent resident status with the USCIS. Declaration of Christina Lee ¶ 2, Ex. A. On June 17, 2005, USCIS approved Plaintiff's I-140 Immigrant Petition for Alien Worker. Id. ¶ 3, Ex. B. On June 17, 2005, the USCIS sent Plaintiff a Request for Evidence requesting proof that Plaintiff properly registered for the National Security Entry-Exit Registration System by February 7, 2003, or

at any time of entry thereafter. Id. ¶ 4, Ex. C.  On June 23, 2005, Plaintiff provided the evidence requested. Id. ¶ 5, Ex. D.  On July 5, 2005, Plaintiff had his biometrics taken at the USCIS Application Support Center ("ASC") in San Jose. Id. ¶ 6, Ex. E.

On October 7, 2005, Plaintiff's counsel submitted an e-mail inquiry to the California Service Center ("CSC") regarding the status of his I-485 application. Lee Decl. ¶ 7, Ex. F.  On October 12, 2005, CSC e-mailed Plaintiff's counsel stating that the application was still pending. Id. ¶ 8, Ex. G.

On March 4, 2006, USCIS sent Plaintiff another Request for Evidence requesting proof that Plaintiff properly registered for the National Security Entry-Exit Registration System by February 7, 2003, or at any time of entry thereafter. Id. ¶ 9, Ex. H.  On March 10, 2006, Plaintiff provided the evidence requested. Id. ¶ 10, Ex. I.  On March 6, 2006, the USCIS sent another Request for Evidence regarding the National Security Entry-Exit Registration System. Id. ¶ 11, Ex. J.  Plaintiff provided the evidence again on March 10, 1006. Id. ¶ 12, Ex. K.

On April 19, 2006, Plaintiff's counsel submitted another e-mail inquiry regarding the status of his I-485 application. Lee Decl. ¶ 13, Ex. L.  On May 9, 2006, the CSC e-mailed Plaintiff's counsel stating that the application was still being processed. Id. ¶ 14, Ex. L.

On August 9, 2006, Plaintiff's counsel submitted another e-mail inquiry regarding his I-485 application. Lee Decl. ¶ 15, Ex. M.  On August 23, 2006, the CSC responded, stating that the application was still pending. Id. ¶ 16, Ex. N.

On September 19, 2006, Plaintiff received an ASC Appointment Notice from the USCIS scheduling him for another biometrics appointment on September 29, 2006 at the ASC in Oakland. Lee Decl. ¶ 17, Ex. O.  On September 29, 2006, Plaintiff went to the ASC in Oakland to have his biometrics taken again. Id. ¶ 18, Ex. O.

On October 31, 2006, Plaintiff's counsel submitted another e-mail inquiry regarding the status of Plaintiff's I-485 application. Lee Decl. ¶ 19, Ex. P.  On November 28, 2006, the CSC responded with an e-mail stating that the application was still awaiting the name check clearance. Id. ¶ 20, Ex. P.

On February 16, 2007, Plaintiff e-mailed the CSC to inquire about his I-485 application. Lee Decl. ¶ 21, Ex. Q.  The CSC responded on February 27, 2007, saying that the application was still

pending awaiting the FBI name check clearance and that the USCIS had no control over how long it would take.  Id.

On February 19, 2007, Plaintiff contacted his congressman seeking assistance.  Lee Decl. ¶ 22.  On February 28, 2007, Plaintiff received a response from his congressman indicating that the name check clearance was still pending and that there was no estimate on how long it would take.  Id. ¶ 22, Ex. R.  On February 20, 2007, Plaintiff contacted Senator Barbara Boxer requesting her assistance with the I-485 application.  Id. ¶ 23.  Senator Boxer's officer responded that the case was still pending and that the Senator could not expedite the process.  Id. ¶ 23, Ex. S.

On February 16, 2007, an on-line Case Status Search indicated that the fingerprint review had been completed and that the case was still being processed.  Lee Decl. ¶ 24, Ex. T.  On February 22, 2007, Plaintiff made an INFOPASS appointment with the USCIS and was told by Officer M. Bolbecker that his name check clearance was initiated on April 14, 2005 and was still pending.  Lee Decl. ¶ 25, Ex. U.

On March 5, 2007, Plaintiff received an e-mail notice from USCIS stating that his I-485 application was transferred to a facility in Lincoln, Nebraska.  Lee Decl. ¶ 26, Ex. V.  The notice stated that applications would be processed in the order they were originally filed, not in the order they were transferred.  Id.  An on-line Case Status Search on March 16, 2007 indicated that Plaintiff's case was still pending in Nebraska.  Lee Decl. ¶ 27, Ex. W.

**II.     Legal Standards**

      **A.     Mandamus Jurisdiction**

"Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available."  Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1997); 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.")

//

3

**B.     APA Jurisdiction**

To invoke jurisdiction under the Administrative Procedure Act ("APA"), "a petitioner must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty." Gelfer v. Chertoff, 2007 WL 902382 at *1 (N.D. Cal., March 22, 2007) (citing Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63-65 (2004)). "Once a petitioner has proven a right to relief under the circumstances, it is the reviewing court's duty to 'compel agency action unlawfully withheld or unreasonably delayed.'" Id., quoting 5 U.S.C. § 706(1). The APA provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall–
>
> (1) compel agency action unlawfully withheld or unreasonably delayed;
>
> . . .
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (emphasis added). The APA further provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added). "Section 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'" Norton, 542 U.S. at 64 (citations omitted) (emphasis in original).

**III.    Discussion**

**A.     Dismissal of FBI Defendants**

Since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. 6 U.S.C. §§ 271(b)(5), 557. Thus, Robert Mueller, the Director of the Federal Bureau of Investigation, is not a proper defendant in this casE. See Konchitsky v. Chertoff, 2007 WL 2070325, *6-7 (N.D. Cal. July 13, 2007) (granting motion to dismiss Robert Mueller: "However, courts squarely addressing the issue of

4

whether they have jurisdiction to compel the FBI to perform name checks in connection with adjustment of status petitions have overwhelmingly concluded that they do not. . . . The court concludes that, while this court has jurisdiction over USCIS with regard to Konchitsky's I-485 application, there is no similar basis for this court to mandate action by the FBI."); see also Clayton v. Chertoff, 2007 WL 2904049, *3 (N.D. Cal. Oct. 1, 2007) (following Konchitsky and dismissing Robert Mueller: "Although the FBI is responsble for conducting Plaintiff's background check, it is not housed within the DHS or the USCIS, which are charged with acting on Plaintiff's I-485 application."); Dmitriev v. Chertoff, 2007 WL 1319533, *4 (N.D. Cal. May 4, 2007) (dismissing Robert Mueller and stating that the only relevant Defendant is Michael Chertoff). Accordingly, Defendants' Motion for Summary Judgment is granted as to the FBI Defendant.

**B.    Relief under 8 U.S.C. § 1252(a)(2)(B)**

Defendants argue that the Immigration and Nationality Act precludes relief:

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review-

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 [adjustment of status] of this title, or

(ii) **any other decision or action** of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added). In Fu v. Gonzales, 2007 WL 1742376, *2 (N.D. Cal. May 22, 2007), this Court rejected Safadi v. Howard, 466 F. Supp. 2d 696 (E.D.Va. 2006), which construed § 1252(a)(2)(B) broadly to preclude judicial review of any discretionary decision or action of the USCIS and held that the statute encompassed "the entire process of reviewing an adjustment application, including the completion of background and security check and the pace at which the process proceeds," and instead followed Iddir v. INS, 301 F.3d 492 (7th Cir. 2002), which held that the plain language of § 1252(a)(2)(B) addresses "decision or action" on immigration matters, not inaction. See Fu, 2007 WL 1742376 at *4 ("This Court agrees with Duan

5

v. Zamberry that adopting Safadi's reading of Section 1252(a)(2)(B)(ii) would render 'toothless all timing restraints, including those imposed by the APA,' which would 'amount to a grant of permission for inaction.' Further, the Safadi court's reliance on the fact that the statute had been amended in 2005 to suggest that the statute should be construed to reflect the heightened security concerns in the post 9/11 world, overlooks the fact that the 'any other decision or action' provision on which it relied was not added to Section 1252(a)(2)(B) by the 2005 amendment, but predated September 11, 2001. . . . Faced with statutory language identical to the current version considered in Safadi, the Seventh Circuit held that 'section 1252(a)(2)(B)(i), by its use of the terms "judgment" and "decision or action," only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections, including section 1255.' . . . The Seventh Circuit held that the court had jurisdiction to review denial of the application on grounds of expiration because that denial did not constitute either a 'judgment' or a discretionary 'decision or action,' unlike an award or denial of relief on the merits, which would likely be covered by section 1252(a)(2)(B). This Court finds the Seventh Circuit's reasoning persuasive and more faithful to the statutory language.") (internal citations omitted). Defendants have cited no authority to compel a different holding in this case. Accordingly, § 1252(a)(2)(B) does not preclude relief in this case.

**C.     Jurisdiction under 28 U.S.C. § 1361 and the APA**

Defendants further argue that the Court lacks jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, and the APA to adjudicate this matter. This Court has previously analyzed this jurisdictional issue and held that, although there is a split of authority on the issue of whether courts have jurisdiction to compel the Attorney General to adjudicate immigration applications without unreasonable delay, "the better reasoned view is that courts have jurisdiction at a minimum under the APA because Defendants have a non-discretionary duty to process the AOS [adjustment of status] applications within a reasonable time, as distinct from its discretionary authority of whether to grant or deny the applications." Fu, 2007 WL 1742376 at *2 ("This Court agrees with the court in Gelfer that to allow the USCIS "a limitless amount of time to adjudicate petitioner's application would be contrary to the 'reasonable time' frame mandated under 5 U.S.C. § 555(b) and, ultimately, could negate the USCIS's duty under 8 C.F.R. 245.2(a)(5). This Court also concurs that simply

6

asserting a need to await results of an FBI name check does not suffice to show the delay was reasonable as a matter of law. Like the court in Gelfer, the court need not reach the question of whether mandamus jurisdiction existed because the APA suffices.") (internal citations and footnote omitted) (citing Gelfer v. Chertoff, 2007 WL 902382 at *1 (N.D. Cal., March 22, 2007). Defendants have cited no authority to compel a different holding in this case. Accordingly, this Court concludes, as it did in Fu, that Defendants have a ministerial duty to act on Plaintiff's I-485 application pursuant to 8 U.S.C. § 1255, within a reasonable time under 5 U.S.C. § 555(b).

### D. Reasonableness of the delay in processing

Pursuant to 8 U.S.C. § 1571(b), "it is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application. . . ." However, "what constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." Gelfer, 2007 WL 902382 at *2 (quoting Yu v. Brown, 36 F. Supp. 2d 922, 934 (D.N.M. 1999)). In addressing the specific issue of unreasonable delay in the processing of an immigration status application, courts have typically "looked to the source of the delay - e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." Singh v. Still, 470 F. Supp. 2d 1064, 1068 (N.D. Cal., Jan. 8, 2007) (quoting Saleh v. Ridge, 367 F. Supp. 2d 508, 512 (S.D. N.Y. 2005)). Moreover, the leading case on the issue of unreasonable delay is Telecomm Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"), which set forth a six-factor test to assess the reasonableness of agency delay:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.' "

TRAC, 750 F.2d at 80 (internal citations omitted); see also Yu, 36 F. Supp. 2d at 931 (applying TRAC factors in immigration case); Singh, 470 F. Supp. 2d at 1069 (same).

Here, there is no evidence that Plaintiff is responsible for any part of the delay. By contrast,

7

the evidence shows that Plaintiff promptly provided any information requested by USCIS. Further, Plaintiff and his counsel actively and frequently sought updates regarding his application from USCIS through e-mail. In addition, Plaintiff sought assistance from his congressman and Senator Boxer.

In fact, while Defendants argue that USCIS has been working on Plaintiff's application, they admit that the delay is solely due to the FBI name check process. Defendants submitted two declarations from Michael Cannon, the Section Chief of the National Name Check Program Section at FBI Headquarters, providing extensive detail about how the name check program system works and that the system is overloaded with requests for name checks. See, e.g., Second Cannon Decl. ¶¶ 13-15 (explaining stages of name check clearance); ¶ 21 (stating that prior to September 11, 2001, the FBI processed approximately 2.5 million name check requests annually, but for the fiscal year 2006, the FBI processed in excess of 3.4 million name checks); ¶¶ 24-25 (stating that 6,300 name check requests are still pending from a batch of 2.7 million submitted by USCIS in December 2002 and January 2003, causing subsequent name check requests to be delayed). Plaintiff has provided evidence that as of October 16, 2007, the FBI was processing I-485 applications from December 19, 2006. Pl.'s Ex. Y. Shifting the onus to the FBI does not, however, show timeliness. See Gelfer, 2007 WL 902382 at *2 (the USCIS had not pointed "to a single action taken during that period of time [of two years] to further the processing of petitioner's application or a reason why petitioner's application is particularly troublesome"); see also Singh, 470 F. Supp. 2d at 1068 ("The critical issue is not whether a particular branch of the federal government is responsible for the delay; it is whether the individual petitioner versus the government *qua* government is responsible."). Nor does it raise a triable issue of fact as to USCIS's duty to process Plaintiff's application within a reasonable time.

In addition, Defendant's declarant Gerard Heinauer, Director of Nebraska Service Center, provides information about the background and fingerprint check required for I-485 applications. Mr. Heinauer also testified that:

> Plaintiff has a background and security check that has not been completed by the Federal Bureau of Investigation, and there are no more employment-based visa numbers available for adjustment adjudications during fiscal year 2007. When the fiscal year 2008 visa numbers become available on October 1, 2007, and Plaintiff's

8

background check is completed, Plaintiff's case can be adjudicated. Heinauer Decl. ¶ 9. The visa numbers ran out as of July 2, 2007. Heinauer Decl. ¶ 8. The responsibility for the lack of visa numbers, however, is not attributable to Plaintiff. In this case, Defendants are entirely responsible for the delay in processing Plaintiff's application.

Moreover, the TRAC factors weigh against finding that the delay in this case was reasonable. While there is no specific timetable for the processing of immigration status applications, the duty to adjudicate those applications, as Defendants concede, is mandatory. Although the delay in this case is substantial, measurement of the delay in years alone does not establish that the delay fails to comport with a rule of reason. Here, however, the remaining factors, in addition to the already lengthy processing period, demonstrate that the delay is unreasonable. Human welfare is at stake; the nature of the interests prejudiced by the delay are personal to Plaintiff. He argues that he has been unable to travel freely and work without restrictions or to plan his future. Pl.'s Mot. at 7. Defendants argue that Plaintiff is not prejudiced because he currently has a work authorization permitting him to work through July 15, 2008 and an advance parole travel document valid through January 2, 2008. But Plaintiff has had to repeatedly apply and pay for extensions for his travel documents and his work authorization. Id. Defendants cite national security as a higher and competing priority resulting in the delay of the application process. Although national security certainly justifies a thorough name check process, there is no contention that Plaintiff's application is particularly complex or any evidence as to why the name check is causing the application processing to take significantly longer than the 180 days suggested by Congress. Finally, while there is no evidence of impropriety by Defendants, good faith conduct is not dispositive of the reasonableness issue. See Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 120 (D. D.C. 2005).

Further, delays similar in length than that at issue here have been found to be unreasonable. See, e.g., Konchitsky, 2007 WL 2070325 at *5-6 (absent a particularized explanation justifying delay, a more than two year delay was unreasonable); Gelfer, 2007 WL 902382 at *2 (more than two year delay may be unreasonable where Defendants could not point to any reason why the particular application was troublesome); Yu, 36 F. Supp. 2d at 932 (two and one-half year delay

9

unreasonable).  In this case, Defendants have provided no evidence to raise a triable issue of fact or to explain why Plaintiff's application is still pending after two and one-half years.  On this record, Plaintiff is entitled to a writ directing the USCIS to act forthwith.

**IV.   Conclusion**

Accordingly, Plaintiff's Motion for Summary Judgment is granted as to the USCIS and denied as to the FBI.  Defendants' Motion for Summary Judgment is denied as to the USCIS and granted as to the FBI.  The USCIS is ordered to complete its adjudication of Plaintiff's I-485 application forthwith.

**IT IS SO ORDERED.**

Dated:  November 16, 2007

ELIZABETH D. LAPORTE
United States Magistrate Judge